NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 06-CV-84-KKC

MICHAEL R. PAGE                                                    PETITIONER

VS:                    **MEMORANDUM OPINION AND ORDER**

SUZANNE HASTINGS, WARDEN, ET AL.                         RESPONDENTS

Michael R. Page, who is confined in the United States Prison-Big Sandy in Inez, Kentucky ("USP-Big Sandy"), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241, which is now before the Court for screening.  28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

<u>CLAIMS</u>

The petitioner challenges the United States Parole Commission's ("USPC") most recent decision to deny him parole in a notice of action dated July 1, 2005, on the grounds that (1) the wrong procedures were used to reach a decision denying him parole and (2) the decision reached by the USPC was arbitrary, capricious, and an abuse of the USPC's discretion.

<u>BACKGROUND</u>

The Court takes judicial notice that this petitioner has presented the same challenges to USPC decisions to courts in the past.

<u>Petition in Eastern District of Virginia</u>

In 2002, while he was in a state prison, the instant petitioner filed *Page v. Pearson*, No. 02-

467-AM, in the United States District Court for the Eastern District of Virginia, challenging a similar

denial of parole in 2001.  Although the USPC corrected a factual error in the 2001 decision, the

corrected version on November 4, 2002, was a denial, nonetheless.  When Page filed a §2241

petition challenging the 2002 decision, the Court set out his factual background, as follows:

> On March 20, 1978, Page pled guilty to (i) second degree murder while armed, (ii) assault with a dangerous weapon, and (iii) robbery in the District of Columbia Superior Court.  He was thereafter sentenced to 15 years, 4 months to life in prison. On August 18, 1989, Page was granted parole by the District of Columbia Board of Parole ("Board") and transferred to a halfway house.  On April 11, 1990, Page was arrested and charged with possession with intent to distribute cocaine.  As a result, Page was returned to prison.  Subsequently, however, the drug charge was dismissed and Page was again transferred to the halfway house on October 9, 1990.

> On November 30, 1990, Corrections Officer Ronald Richardson and Sergeant Jessie Smith detected an odor emanating from Page's room at the halfway house and opened the door . . . . Page retrieved a gun from his bed, pointed it at the officers, threatened to shoot them, and then escaped from the halfway house.  This conduct netted Page additional charges in the District of Columbia Superior Court, including (i) prison breach, (ii) assault on a police officer with a dangerous weapon, (iii) two counts of assault on a correctional officer, (iv) armed kidnaping, (v) assault with a deadly weapon, (vi) possession of a firearm during a violent crime, and (vii) drug possession.

> Page was not thereafter apprehended until January 8, 1991, at which time additional charges were lodged against him on the basis of conduct at the time of his arrest, including (i) possession of ammunition, (ii) possession of drug paraphernalia, (iii) carrying a deadly weapon, and (iv) having an unregistered firearm.  On April 30, 1991, the Board revoked Page's parole.

> At trial on the various charges against him in the District of Columbia Superior Court, Page was found guilty only of the charges of prison breach and possession of ammunition.  He was acquitted of the remaining charges.[1]  On December 11, 1991, Page was sentenced to a consecutive term of 20 months to five years for the prison breach.  Later, on April 16, 1992, Page was sentenced by the same court to a one-year consecutive term for possession of ammunition.

---

[1]  The Court footnoted that the record did not disclose whether Page was tried on all the charges then pending against him, nor reflect any reason for the acquittals other than that Officer Richardson had been shot and killed prior to trial and hence was unavailable to testify.

On July 15, 1994, the Board conducted a parole hearing, at which Page denied that he possessed a weapon or drugs at the time of his 1990 escape and claimed that he had left the halfway house out of fear because Officer Richardson had threatened him in the past. The hearing examiner rejected Page's denial and recommended that the Board deny Page's parole.

[History of hearings and denials of parole in 1994, 1996, and 1997 by the D.C. Board of Parole. On August 5, 1998, the D.C. Board was abolished and the U.S. Parole Commission took over all parole matters for D.C. offenders. National Capital Revitalization and Self-Government Improvement Act, Pub.L. No. 105-33, §11231(a)(1), 111 Stat. 712, 745; *Franklin v. Dist. of Columbia,* 163 F.3d 625, 632 (D.C.Cir.1998); 28 C.F.R. §2.70(a); D.C.Code §24-131.]

[On] October 10, 2001, Page received a reconsideration hearing before the U.S. Parole Commission ("USPC"). At the hearing, Page denied shooting anyone with regard to his 1978 criminal convictions and further alleged that the murder victim was actually shot by his brother, now deceased. In addition, a psychological evaluation of Page revealed that he had no mental disorders. However, the hearing examiner concluded that Page remained an extremely serious risk of danger to the community based on his 1978 offenses and his escape by force from the halfway house.

The USPC agreed with the hearing examiner's recommendation, and Page was notified of the decision denying parole by Notice of Action dated November 29, 2001. In addition to advising Page that his parole was denied, the Notice also informed him that he was scheduled for a parole rehearing in October 2003. The Notice further stated that, although the guidelines suggested parole should be granted, a departure from the guidelines was warranted because:

> you are a more serious risk than indicated by your grid score in that based upon the level of violence which occurred in the original offense which involved Murder II and a separate offense that involved Assault with a Deadly Weapon, and a third that involved Murder. [sic] Also, you have a history of an escape and altercation with a staff member.

On November 4, 2002, the USPC issued a revised Notice of Action, which corrected the misstatement in the original Notice; the revised Notice correctly stated that Page had been convicted of second degree murder, assault with a deadly weapon, and robbery, not another murder as indicated in the original Notice.

On March 20, 2002, Page filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. . . .

3

*Page v. Pearson*, now published at 261 F.Supp.2d 528, 528-530 (E.D. Virginia), *appeal dism'd* 74 Fed.Appx. 275 (4th Cir. 2003).

The district court then proceeded to address the merits of the 2002 petition which challenged the 2001/corrected 2002 decision.  In the petition, "Page allege[d] that the USPC violated his constitutional rights by relying on criminal charges Page was acquitted of to deny him parole repeatedly."  *Id.* at 530.  The Court began its discussion as follows:

> Analysis properly begins with a focus on the scope of judicial review of parole decisions.  On this issue, the law is pellucidly clear:  Congress committed decisions to grant or deny parole to the absolute, unreviewable discretion of the USPC.  18 U.S.C. 4218(d) (repealed); *see also Garcia v. Neagle,* 660 F.2d 983, 988 (4th Cir.1981); *United States Bd. Of Parole v. Merhige*, 487 F.2d 25, 29 (4th Cir.1973).  Parole decisions are therefore not subject to arbitrary and capricious or abuse of discretion review under the provisions of the Administrative Procedure Act, 5 U.S.C. §701(a)(2).  Yet, this does not mean parole decisions are wholly immune from judicial review; to the contrary, courts in cases challenging USPC decisions may consider claims that the USPC "exceeded its legal authority, acted unconstitutionally or failed to follow its own regulations."  *See Garcia*, 660 F.2d at 988; *see also Fardella v. Garrison,* 698 F.2d 208, 210 (4th Cir.1982).[2]
>
> Given this carefully circumscribed scope of judicial review of USPC decisions, it follows that Page cannot prevail on his claims that the USPC abused its discretion in relying on acquitted conduct and in departing from the guidelines to deny his parole.  The USPC's exercise of discretion in granting or denying Page's parole is unreviewable and thus this Court is "without power to engage in judicial review of the Commission's substantive decision" to deny Page's parole.  *Garcia,* 660 F.2d at 988.  In other words, the substance or merits of the parole decision concerning Page are beyond judicial review.
>
> But the analysis cannot end here; Page's claims must now be examined to determine whether they may be read as claiming that the USPC, in denying Page's parole, acted *ultra vires,* unconstitutionally, or in contravention of its own regulations.  These are Page's only possible avenues to relief, but for him, they are dead ends.

---

[2] Although the Parole Commission and Reorganization Act of 1976 was technically repealed on November 1, 1987, the U.S. Congress has repeatedly extended the life of the USPC, which is currently set to expire on October 31, 2008.  *See U.S. Parole Commission and Sentencing Commission Authority Act of 2005*, P.L. 109-76, Sec. 2.

*Id.* at 231. The Court ultimately found the petitioner's 2002 claims meritless, holding as follows:

> [T]he USPC appropriately considered the unusual circumstances presented, namely Page's convictions for the violent offenses of second-degree murder, assault with a deadly weapon and robbery, his escape from the halfway house, and his altercation with the corrections officers while escaping. Thus, the USPC in its discretion appropriately departed from the guidelines. The record plainly reflects that the USPC's decision to depart from the guidelines was not arbitrary, but rather based upon a review of all of the information presented in the hearing examiner's report. Accordingly, Page has failed to demonstrate that the USPC, in departing from the guidelines, disregarded its procedures, acted beyond its legal authority, or violated the Constitution.

*Id.* at 532.

<u>Previous Petition in the Eastern District of Kentucky</u>

The petitioner has also filed a previous §2241 petition in this Court. In *Michael R. Page v. Suzanne Hastings, et al.*, Pikeville No. 05-CV-230-KKC, Petitioner Page gave few factual details, stating only that he had received a 13-years-to-life sentence in the District of Columbia Superior Court and complaining that since 1994, he has been consistently denied parole, and his release eligibility hearings have been scheduled at 2-year intervals, rather than annually. Attachments to the petition included copies of parole denials of 1991, 1994, 1996, and 1997 by the D.C. Board of Parole and USPC denials in 2001,[3] 2003, and 2005.

The petitioner complained that in its most recent decision, that dated July 1, 2005, the USPC wrongly denied parole and set the next parole eligibility hearing for another two-year interval, May of 2007. Petitioner claimed that in scheduling a set-off date in 2007, instead of a set-off date in one year,[4] the USPC (1) violated his due process rights under the Fifth Amendment of the United States

---

[3] Another exhibit is the USPC's corrected notice of this decision in November of 2002.

[4] A "set-off date" is defined as the date on which a prisoner is to be considered for parole. *Hammond v. Quick*, 829 A.2d 509 (D.C. 2003). "Set-off dates" are based on the length of the prison sentence being served, and

Constitution, and (2) violated his right to freedom of speech under the First Amendment.

This Court easily dismissed the First Amendment claim for Page's failure to state a cognizable claim, and then dismissed the due process claim on the merits, the Court writing as follows:

> The petitioner's allegation that the USPC's decision violated the Fifth Amendment fails for two reasons. First, numerous D.C. decisions have rejected the argument that the denial of a parole eligibility hearing deprives a prisoner of his right to due process of law under the Fifth Amendment. *See Anyanwutaku v. Moore*, 151 F.3d 1053, 1059 (D.C. Cir. 1998) (D.C. parole statutes and related municipal regulations do not create a liberty interest subject to due process protection under *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S. Ct. 2100 (1978)); *Brown-Bey v. Hyman*, 649 A.2d 8, 10 (D.C.1994) (noting after *Greenholtz* analysis that "the Board's determination of an appropriate set-off date does not implicate due process considerations")[5] . . . [additional citations omitted].

> "Because the statute and regulation vest in the Board [now, the USPC] substantial discretion in granting or denying parole," prisoners generally have no statutory or constitutional interest in a parole reconsideration date. *White v. Hyman*, 647 A.2d 1180; *see also Jones v. Braxton*, 647 A.2d 1116, 1117 (D.C. Cir. 1994) "[U]nless the state can be said to have placed ... a substantive limitation on the exercise of official discretion," a failure to follow a guideline or any other non-binding guidance cannot be characterized as a deprivation of liberty. *See Hall v. Henderson*, 672 A.2d 1047, 1051 (D.C.1996).

> Second, the Guidelines upon which the USPC relies give it broad discretionary power in making parole eligibility determinations. Such discretionary power eliminates any argument that the petitioner has a protected liberty interest in a yearly parole consideration hearing.

> . . .

---

are codified at 28 DCMR §104.1 (prisoners serving less than five years) and §104.2 (prisoners serving more than five years).

[5] These cases predated *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (2005). *Sandin* held that state-created liberty interests are to be generally limited to freedom from restraint which imposes an "atypical and significant" hardship on an inmate, in relation to the ordinary incidents of prison life. *Id.*, 515 U.S. at 479; 115 S. Ct. at 2300.

> Without a liberty interest, the plaintiff has no due process claim. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir.1993). Due process rights are only triggered by the deprivation of a legally cognizable property interest. *Mitchell v. Horn*, 318 F.3d 523, 531 (3rd Cir. 2003). The Court has already discussed and determined that the petitioner has no liberty interest in being paroled , under the Fifth Amendment and D.C. case law. . . .

Record No. 4 at 3-8.   This Court concluded that the petition of 2005, challenging the USPC's decision of July 1, 2005, failed to state a constitutional claim and dismissed it, *sua sponte*, with prejudice, citing 28 U.S.C. §1915(e)(2)(ii). *See Page V. Hastings*, No. 05-CV-230-KKC, Memorandum Opinion and Order and Judgment, dated November 10, 2005 [Record No. 4]. Petitioner Page did not appeal.

<u>CURRENT FACTUAL ALLEGATIONS</u>

A few months after this Court's dismissal of his first petition, Page again submitted a petition of his own styling to this Court. He again attached copies of the same parole denials which he presented to this Court before, the last being the USPC decision of July 1, 2005. This time the petitioner has also attached additional documents, including a copy of the <u>D.C. Municipal Regulations</u>, Title 28, which purportedly apply to D.C. offenders' parole consideration; and the hearing examiners' summaries and recommendations after both his 2003 and 2005 hearings.

As to the facts of his parole history, the petitioner herein admits that he was paroled in 1990, but "prior to the parole date taking effect," he was arrested and charged with several crimes, for which he was sentenced to additional consecutive sentences. However, that was long ago, says the petitioner, and the USPC's decision considered the wrong factors. He complains that because the USPC assumed the parole functions of the D.C. Board of Parole in 1998, it should apply the same standards for D.C. Code offenders as it uses for federal offenders, but the USPC has wrongly used

7

the Board's old 1987 guidelines for D.C. offenders, including the 2005 decision.

Additionally, the petitioner claims that the USPC's challenged decision of July 1, 2005, was arbitrary, capricious, and an abuse of the USPC's discretion. He argues vehemently that the reasons cited in that 2005 denial were old factors which had been considered when the USPC had denied parole previously, rather than more recent information regarding his behavior and rehabilitation since his incarceration, such as his committing no prison infractions, expressing sincere remorse for his part in the original crimes in recent years, and helping fellow inmates.

The attached 3-page summary of the May 19, 2005 hearing contains two examiners' recommendations to grant Page parole, but also contains an executive reviewer's comments, disagreeing with the examiners' recommendations. The reviewer set out the reasons for his disagreement and specifically stated that he agreed with the reasons to deny parole which were used in Page's previous USPC decision, that in 2003. In the subsequent July 1, 2005 decision, the USPC chose to rely on the reason given by the reviewer, not the two examiners; and the USPC's stated reasons for the denial in 2005 mirror the language used in its 2003 decision. As it had done in 2003, the Commission denied parole and scheduled another 2-year set-off.

The petitioner alleges that everyone but the one central reviewer and the USPC has agreed that he is a candidate for parole, and he asks that the Court grant his petition and order a new parole hearing, with specific directions.

<u>DISCUSSION</u>

The petitioner challenges herein the very same July 1, 2005 decision of the USPC which he challenged before this Court last year, just after the 2005 decision was handed down. His current claims, however, are slightly different. While his earlier proceeding challenged the 2-year set-off

8

between considerations for parole, the instant petition looks at the decision itself, claiming that the USPC weighed the wrong factors and arrived at a wrong decision.  It is he who is wrong.

First, it is clear that the Parole Commission has statutory authority to make parole determinations in Page's case.  *See* D.C. Code §24-131.  There is no doubt that "the D.C. Code and not federal law controls the parole release date of D.C. Code offenders regardless of where the offender is incarcerated."  *Stewart v. Keohane*, No. 87-5603, 1988 WL 23706, at *1 (6th Cir. 1988) (unpublished).  When the USPC took over the authority to decide parole matters of D.C. Code offenders in 1998, it was also empowered to amend or supplement any regulation interpreting or implementing the parole law of the District of Columbia.

Accordingly, the USPC incorporated and developed its own guidelines for making parole decisions for D.C. prisoners, and these are now codified in 28 C.F.R.§2.80.  The end result is that D.C. parole laws and regulations must be applied when making parole decisions for prisoners serving D.C. terms in federal prison.  *Jackson v. Compton*, 2003 WL 24146652 (W.D. Va. 2003) (slip op).  The record provided by the petitioner shows that the USPC used the D.C. regulations and there is no legal error in its doing so.

In its decision of July 1, 2005, the USPC noted that the petitioner was still being scored under the 1987 guidelines of the Board, and indicated that parole should be granted under those guidelines.  However, the USPC explained its decision outside the guidelines, as follows:

> . . . After consideration of all factors and information presented, a departure from the guidelines at this consideration is warranted because you are a more serious risk than indicated by your grid score in that based upon the multiple acts of high-level violence you committed in the instant original offense behavior.  Specifically, you were involved in two separate offenses where a victim was shot and a third incident where victims were robbed at gunpoint.  When you were given a previous change [sic] to re-integrate into the community through placement in a work release

9

program, you forcibly escaped after displaying a weapon; these multiple acts of violence make you a serious risk to release to the community.

Notice of Action, dated July 1, 2005.  This language is the same as the executive reviewer's, verbatim.[6]  This language also appeared, with one corrected word and one change in punctuation in the USPC's 2003[7] decision to deny this petitioner parole.

There is nothing in the guidelines which would make it wrong for the USPC to rely on older violent conduct, rather than newer conduct in the prison setting, when making a parole decision.  To the contrary, the guidelines for determining whether a D.C. offender should be paroled involves assigning "numerical values to pre- *and* post-incarceration factors."  28 C.F.R. §2.80(b) (emphasis added).  The regulations also define "high level violence," which the USPC relied upon in the instant case, the definitions including "murder . . . [and] any offense . . . in which the offender intentionally discharged a firearm."  28 C.F.R. §2.80(g).  Additionally, in subsection (n), the regulation provides for decisions outside the guidelines.  For poor parole risks, the factors warranting a decision above the guidelines are listed, including "persistent failure under supervision," and "prior record of violence,"and "extensive prior record."

_____

[6] "You are a more serious risk than indicated by your grid score in that based upon the multiple acts of high-level violence you committed in the instant original offense behavior.  Specifically, you were involved in two separate offenses where a victim was shot and a third incident where victims were robbed at gunpoint.  When you were given a previous change to re-integrate into the community through placement in a work release program, you forcibly escaped after displaying a weapon; these multiple acts of violence make you a serious risk to release to the community."  Hearing Summary, dated May 28, 2005.

[7] "After consideration of all factors and information presented, a departure from the guidelines at this consideration is warranted because you are a more serious risk than indicated by your grid score in that based upon the multiple acts of high-level violence you committed in the instant original offense behavior.  Specifically, you were involved in two separate offenses where a victim was shot and a third incident where victims were robbed at gunpoint.  When you were given a previous chance to re-integrate into the community through placement in a work release program, you forcibly escaped after displaying a weapon.  These multiple acts of violence make you  a serious risk to release to the community."  Notice of Action, dated August 12, 2003.

10

As one can tell from the same language of the regulation and the USPC's stated reasons for its decision, the regulation's factors clearly guided the USPC's 2005 decision to deny Page parole and to go above the guidelines.

With regard to the decision itself, as Page has been told by the United States District Court for the Eastern District of Virginia, the scope of judicial review of the parole decision itself is quite limited. In addition to the Fourth Circuit cases cited by that court, there are cases wherein the Sixth Circuit has also held that any challenge to the substance or merits of a parole decision cannot be the basis for a successful habeas petition because it is based upon review of a factual determination of the USPC. *See Farkas v. United States*, 744 F.2d 37, 39 (6th Cir. 1984); *see also Goodman v. Hurst*, 47 F.3d 1168 (6th Cir. 1995) (applying *Farkas* to prisoners serving their sentence in a federal correctional facility for violation of the District of Columbia Code).

Consistent with the Fourth Circuit's opinion and the afore-described Sixth Circuit law, federal courts may review decisions by the USPC only to determine whether a rational basis exists for the Commission's conclusions and to consider whether the Commission acted within its statutory and regulatory authority. *See Kimberlin v. White*, 7 F.3d 527, 533 (6th Cir. 1993); *Hackett v. United States Parole Comm'n*, 851 F.2d 127, 129-30 (6th Cir. 1987) (per curiam); *Farkas*, 744 F.2d at 39 (6th Cir. 1984). *Cf. Solomon v. Elsea*, 676 F.2d 282, 290 (7th Cir. 1982).

"Thus, the inquiry is not whether the Commission's decision is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions." *Hinson v. United States*, 205 F.3d 1340, 1999 WL 1296871 at *1 (6th Cir. 1999) (unpublished). The USPC's finding that the nature and number of Page's offenses and recidivist behavior was deserving of a departure from the

11

guidelines, is permissible under the regulations and supported on the record.

This is essentially a factual determination which is supported on the instant record, the record herein including Page's escape and his admission to murder, robbery, and violent conduct while on earlier short-lived paroles, short-lived in that they lasted only a few months after each release until he was arrested for new criminal activity. In short, the wrong standards were not used and the purported "wrong" decision finds support in the record and is therefore insulated from the Court's review. *See Hackett*, 851 F.2d at 129. A federal court may not overturn a decision by the USP "unless there is a clear showing of arbitrary and capricious action or an abuse of discretion." *McKinnon v. Conner*, 120 Fed.Appx. 280, 283 (10th Cir. 2005). No such showing has been made herein and the Court may not, therefore, intrude in the process to grant the relief the petitioner seeks.

To the extent that the instant petitioner's Fifth Amendment claim survives this Court's earlier opinion or this one, the Court repeats that Page has failed to state a cognizable claim. A convicted prisoner has no inherent right to parole under the Constitution. *See Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987); *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979); *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 464-65 (1989). In the *Greenholtz* case, the Supreme Court stated that there is no constitutionally protected liberty interest; "the possibility of parole provides no more than a mere hope that the benefit will be obtained." 442 U.S. at 11.

The Sixth Circuit has also held that when a state's parole discretion is broad, as is true for the District of Columbia, state "procedural statutes and regulations governing parole do not create federal procedural due process rights." *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994) (en banc). Nor is there a basis for release under the doctrine of substantive due process when the parole statutory scheme does not afford the inmate a protected liberty interest in parole. *Bailey v.*

12

*Gardebring*, 940 F.2d 1150 (8th Cir. 1991). There is nothing in the scheme or its application to Page that shocks the conscience of the Court.

The petitioner having failed to state a claim upon which this Court may grant relief, his petition must be denied, again.

<u>CONCLUSION</u>

Accordingly, **IT IS ORDERED** that Michael R. Page's petition for writ of habeas corpus is **DENIED**. This action will be **DISMISSED** from the docket of the Court, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the respondent.

Dated this 30th day of June, 2006.

**Signed By:**

***Karen K. Caldwell***

**United States District Judge**

13